1  ANDREW VALENTINE, Bar No. 162094
   andrew.valentine@dlapiper.com
2  BRENT YAMASHITA, Bar No. 206890
   brent.yamashita@dlapiper.com
3  ERIK R. FUEHRER, Bar No. 252578
   erik.fuehrer@dlapiper.com
4  DLA PIPER LLP (US)
   2000 University Avenue
5  East Palo Alto, CA  94303-2214
   Tel:  650.833.2000
6  Fax:  650.833.2001

7  Attorneys for Defendant and Counterclaimant
   DIGITAL INSIGHT CORPORATION
8
   RODGER R. COLE, Bar No. 178865
9  rcole@fenwick.com
   HEATHER N. MEWES, Bar No. 203690
10 hmewes@fenwick.com
   FENWICK & WEST LLP
11 Silicon Valley Center
   801 California Street
12 Mountain View, CA  94041
   Telephone:  650.988.8500
13 Facsimile:  650.938.5200

14 Attorneys for Defendant and Counterclaimant
   DIGITAL INSIGHT CORPORATION
15
                  UNITED STATES DISTRICT COURT
16
               NORTHERN DISTRICT OF CALIFORNIA
17
                    SAN FRANCISCO DIVISION
18

| | |
|---|---|
| MSHIFT, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL INSIGHT CORPORATION, a Delaware corporation, COMMUNITY TRUST FINANCIAL CORPORATION, a Louisiana corporation, and COMMUNITY TRUST BANK, a Louisiana corporation,<br><br>Defendants. | CASE NO.  C10-00710 (WHA)<br><br>**DEFENDANT AND COUNTERCLAIMANT DIGITAL INSIGHT CORPORATION'S MOTION TO STAY CASE AS TO DEFENDANTS COMMUNITY TRUST FINANCIAL CORPORATION AND COMMUNITY TRUST BANK**<br><br>Date:          April 15, 2010<br>Time:         8:00 a.m.<br>Dept:         Courtroom 9, 19th Floor<br>Judge:       Hon. William H. Alsup<br><br>Complaint Filed:    February 19, 2010 |

-1-

1 | DIGITAL INSIGHT CORPORATION,

2 |         Counterclaim-Plaintiff,

3 |    v.

4 | MSHIFT, INC.,

5 |         Counterclaim-Defendant.

6 | **NOTICE OF MOTION**

7 | PLEASE TAKE NOTICE, that on April 15, 2010 at 8:00 a.m., or as soon thereafter as this

8 | matter may be heard, before the Honorable William H. Alsup, Courtroom 9, at the United States

9 | District Court for the Northern District of California, located at 450 Golden Gate Avenue, San

10 | Francisco, CA 94102, Defendants Digital Insight Corporation ("DI"), by and through its counsel

11 | of record, will move the Court for an order staying this action as to Defendants Community Trust

12 | Financial Corporation and Community Trust Bank (collectively, the "Customer Defendants")

13 | until the underlying claims of patent infringement are resolved as to DI.

14 | The Court should grant DI's motion because: (1) the requested stay would streamline the

15 | case; (2) the requested stay would minimize the burden on the Customer Defendants, who did not

16 | design and do not operate the relevant mobile banking product, as well as the other DI customers

17 | that Plaintiff MShift, Inc. ("MShift") has threatened to add to the case; and (3) the requested stay

18 | would not unduly prejudice MShift. Accordingly, DI respectfully requests that the Court issue an

19 | order staying this case as to the Customer Defendants pending the resolution of MShift's patent

20 | infringement claims as to DI. This Motion is based on the Memorandum of Points and

21 | Authorities herein, the Declarations of Cary Davis and Albert Ko, the pleadings and papers on file

22 | in this action, and such matters upon which the Court may take judicial notice, and argument and

23 | evidence to be presented at the hearing on this Motion.

24 | **MEMORANDUM OF POINTS AND AUTHORITIES**

25 | **I.    INTRODUCTION**

26 | DI respectfully requests that the Court stay this action as to the Customer Defendants until

27 | the underlying claims of patent infringement are resolved as to DI. Although the Complaint by

28 | MShift contains no detail about the accused product or theory of infringement, the only possible

1   product even tangentially relevant to the subject matter of the sole patent-in-suit is a mobile

2   banking service that is offered and hosted by DI.  The Customer Defendants—who are related

3   entities and operate a small regional bank based in Louisiana—have purchased this service from

4   DI.  However, these Customer Defendants otherwise have no role in operating the service, and

5   MShift knows this.  DI has dozens of mobile banking customers, yet MShift elected to sue a

6   customer who is relatively small and located in a region that is a substantial distance from this

7   forum.  MShift did this not because it believes in good faith that it has legitimate claims against

8   the Customer Defendants; instead, MShift's motivation is simply to scare other customers and

9   potential customers away from selecting the DI/MMV mobile banking solution by threatening

10  them with this litigation and holding the current Customer Defendants out as exemplars.

11          MShift's decision to sue the Customer Defendants in this lawsuit is part of a larger

12  strategy to threaten and intimidate DI's customers to pressure them to use MShift's product

13  instead of DI's.  The CEO of MShift has threatened to add all financial institutions who are both

14  current DI customers and former or current MShift customers to this lawsuit unless those

15  institutions cease using DI's mobile banking solution.  DI believes there are approximately 89

16  such financial institutions.  If MShift carries through on its threats, there will be significant case

17  management hurdles with such a large number of defendants.  For each of those institutions, DI

18  would be the true party-in-interest, as it operates the mobile banking services for those

19  institutions.

20          Staying the case against the Customer Defendants so that the suit proceeds only against DI

21  would further the interests of all parties and minimize the burden on judicial resources.  It also

22  would set a clear precedent as to how the case will proceed if MShift carries through on its threat

23  to add additional defendants to the case.

24  **II.     STATEMENT OF ISSUES TO BE DECIDED**

25          Whether this action should be stayed as to the Customer Defendants pending the Court's

26  resolution of MShift's claims of patent infringement as to DI.

27

28

## III.   FACTUAL BACKGROUND

### A.   The Complaint and the '881 Patent

MShift filed a Complaint on February 19, 2010, alleging that DI and the Customer Defendants are infringing U.S. Patent No. 6,950,881 (the "'881 patent"). The '881 patent is titled "System for Converting Wireless Communications for a Mobile Device." *See* Dkt. No. 1 ("Complaint"), Exhibit A ('881 patent). The Abstract of the '881 patent describes the technology disclosed in the patent as follows:

> A system is provided for exchanging communications between a mobile device and a network site. The system includes a the [*sic*] conversion engine that coupled to network site in response to a request signaled from the mobile device. The mobile device signals the request using a first language. The network site processes the request in a second language. The conversion engine converts communications from the first language to the second language to enable communications between the network site and the mobile device.

*See* Complaint, Exhibit A at Abstract. Thus, one key aspect of the '881 patent is a "conversion engine" that facilitates communication between a mobile device and a network Web site.[1]

The Complaint contains only one cause of action—infringement of the '881 patent. *See Id.* at ¶¶ 8-14. The allegations are made collectively against DI and the Customer Defendants. *See Id.* MShift has not pled any facts that apply to the Customer Defendants that are not pled as to DI as well. *See id.*

The Complaint is silent as to which products are accused or which claims are allegedly infringed. However, as discussed in greater detail below, the only action taken by the Customer Defendants that possibly can be relevant to the suit is its purchase of a DI online banking product accessible by mobile devices.

### B.   The Products Offered by DI and the Customer Defendants

DI provides a wide variety of mobile online banking services to mid-market financial institutions, such as banks and credit unions, across the United States. *See* Declaration of Albert Ko in Support of Defendant Digital Insight Corporation's Motion to Stay Case as to Defendants

---

[1] DI does not utilize a "conversion engine" or anything similar in its products, and it is confident that it ultimately will obtain a finding of noninfringement for this reason and numerous others.

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\21894060.1

DIGITAL INSIGHT'S MOTION TO STAY CASE
CASE NO. C10-00710 (WHA)

1    Community Trust Financial Corporation and Community Trust Bank ("Ko Declaration"), ¶ 3.

2    One of the services offered by DI is mobile banking—a service that allows financial institutions'

3    customers to access their bank accounts from mobile devices such as iPhones®, Blackberrys®, or

4    regular cell phones. *See id.* at ¶ 3. DI currently has a preferred vendor that provides the software

5    for and manages its mobile banking services. *See id.* at ¶ 4. This is a company called Mobile

6    Money Ventures or MMV. *See id.* at ¶ 4.

7        Financial institutions provide DI with account data. *See id.* at ¶ 5. However, DI hosts the

8    financial institution's online and mobile browser-based banking applications on DI's own servers.

9    *See id.* at ¶ 5. Thus, for example, when the financial institution's customer accesses his or her

10    account online, he or she is actually accessing a Web site hosted by DI, not by the financial

11    institution. *See id.* at ¶ 6. Likewise, when that customer accesses his or her account from a

12    mobile device, he or she is accessing a mobile version of that Web site also hosted by DI and

13    managed by MMV. *See Id.* at ¶ 6.

14        Defendant Community Trust Bank ("CTB") is a customer of DI. *See Id.* at ¶ 7.

15    Community Trust Financial Corporation ("CTFC") is a holding company that owns CTB. *See*

16    Declaration of Cary Davis in Support of Defendant Digital Insight Corporation's Motion to Stay

17    Case as to Defendants Community Trust Financial Corporation and Community Trust Bank

18    ("Davis Declaration"), ¶ 2. CTB is a small regional bank with its headquarters in Louisiana and

19    26 branches in Louisiana, Mississippi, and Texas. *See id.* at ¶ 2. CTB and CTFC are privately-

20    held corporations. *See id.* at ¶ 2. CTB and CTFC do not have any physical presence in

21    California. *See id.* at ¶ 2.

22        DI provides CTB with internet banking and mobile banking services. *See* Ko Declaration,

23    ¶ 7. Accordingly, when a CTB customer logs into online banking from CTB's website, that user

24    is accessing a Web site hosted by Digital Insight, and not CTB. *See id.* One of the services

25    available through online banking is mobile banking. *See id.* When a customer accesses the

26    mobile banking service from a mobile device, he or she is directed to a Web site hosted by Digital

27    Insight. *See id.*

28

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\21894060.1

DIGITAL INSIGHT'S MOTION TO STAY CASE
CASE NO. C10-00710 (WHA)

1

### C. DI's Indemnification of the Customer Defendants

2   DI is indemnifying and defending both Customer Defendants in this lawsuit, pursuant to

3   DI's standard contract terms. *See* Ko Declaration, ¶ 9.

4

### D. MShift's Threats to Add Additional Customers to the Suit

5   Over ten current Digital Insight customers have reported that MShift has threatened to add

6   them to this lawsuit if they do not immediately cease using or refrain from implementing Digital

7   Insight's mobile banking product. *See* Ko Declaration, ¶ 10. MShift likely has contacted many

8   additional Digital Insight customers. *See id.*

9   MShift's CEO, Scott Moeller, has sent emails to DI customers that included the following

10  threats:

11  • "As you know through our prior telephone discussions, as well as the material

12  forwarded to you by MShift, we recently filed a patent infringement lawsuit

13  against DI, and against Community Trust Bank." *Id.* at ¶ 11.

14  • "…unless the Digital Insight Mobile Banking site is shut down, *MShift will name*

15  *[your financial institution] as an additional co-defendant* by the end of business

16  on Wednesday, March 3rd, 2010." *Id.* at ¶ 11 (company name omitted; emphasis

17  added).

18  • "Essentially, our schedule of naming defendants is scheduled by the terms of the

19  court; from the date of our initial filing, MShift has 20 days within which to name

20  all initial co-defendants. *It is our intention to name all Financial Institutions*

21  *that are or have been MShift customers which now have a MMV / Digital*

22  *Insight Mobile Banking site.*" *Id.* at ¶ 11 (emphasis added).

23  DI believes there are approximately *89 financial institutions* who are DI mobile banking

24  customers and current or former MShift customers. *Id.* at ¶ 12. Thus, although at the moment

25  there are only two customers of DI named in the suit, MShift is threatening to add many more

26  customers to the lawsuit as part of its hard-ball tactics to disrupt the businesses of DI and its

27  customers.

28

DLA Piper LLP (US)
East Palo Alto

WEST\21894060.1

-6-

DIGITAL INSIGHT'S MOTION TO STAY CASE
CASE NO. C10-00710 (WHA)

IV.  **STAYING THE CASE AS TO THE CUSTOMER DEFENDANTS WOULD STREAMLINE THE LITIGATION AND WOULD NOT CAUSE ANY PREJUDICE.**

A.  **The Court Has Broad Discretion To Stay To Issue a Stay.**

A court has the discretion to stay a case if the interests of justice so require. *U.S. v. Kordel*, 397 U.S. 1, 12 n. 27 (1970). The "power to stay proceedings is incidental to the power inherent in every court to control disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

When considering a motion to stay, courts consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is complete; and (4) whether a trial date has been set. *O'Keeffe's, Inc. v. Technical Glass Prods.*, 2007 WL 4105976 (N.D. Cal. Nov. 16, 2007).

Here, all four factors favor a stay against the Customer Defendants.

B.  **A Stay Would Not Unduly Prejudice MShift.**

A stay against the Customer Defendants would not unduly prejudice MShift. The relevant technology is provided by DI, and MShift will be able to obtain all necessary discovery from DI. There is no discovery relevant to liability issues that is required from the Customer Defendants, as DI is the actual operator of the Customer Defendants' mobile banking solutions. The Customer Defendants likely do not possess any documents relevant to liability that DI does not itself possess.

C.  **A Stay Would Simplify the Issues and Trial of the Case.**

1.  **Courts Recognize That It Is More Efficient To Resolve Infringement Claims Against Manufacturers Before Resolving Issues Against Customers.**

Courts commonly stay a case for patent infringement against a customer to allow a parallel case to proceed against the manufacturer instead. *See, e.g., Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (stating that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the

-7-

1   manufacturer."). The Federal Circuit has stated that "the manufacturer is the true defendant in the

2   customer suit. . . . it is a simple fact of life that a manufacturer must protect its customers, either

3   as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse

4   ruling against its products." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)

5   (quoting *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)).

6          Although most of the cases granting a stay as to customers have involved two separate

7   lawsuits (one against customers and another against the manufacturer), the same reasoning

8   applies in instances where the customer and manufacturer are sued in the same lawsuit, and a stay

9   as to the customers is justified.[2] A case on point is *Commissariat A L'Energie Atomique v. Dell*

10  *Computer Corp.*, 2004 WL 1554382 (D. Del. May 13, 2004). There, the plaintiff initiated a

11  patent infringement suit against the manufacturers of LCDs and their customers. *Id.* at *1. The

12  court concluded that a stay against the customer defendants was appropriate, finding that a stay

13  would streamline the case and would not result in undue prejudice to the plaintiff. *Id.* at *2. The

14  court reasoned:

15              Because the manufacturers are intimately involved in the design,
                operation, and use of the accused LCD panels, they are in the best
16              position to contest the validity and infringement of CEA's asserted
                patents. Resolving these issues prior to proceeding against the
17              OEM/distributors and retailers would surely simplify this case. If,
                for example, CEA's patents were found invalid or the manufacturers
18              would found to be not infringing, then there would be no need to
                proceed against the OEM/distributors or retailers, thus conserving
19              judicial resources and expense to the parties.

20  Like the manufacturers in *Commissariat*, DI is in the best position to contest the validity and

21  infringement of the asserted patent. If MShift fails to prove infringement against DI or if DI

22  prevails on any of its affirmative defenses, such as invalidity, then there will be no need to

23  proceed against the Customer Defendants, which would preserve judicial resources. This

24  efficiency would be even greater if MShift carries through on its threats and adds additional

25  financial institutions as defendants.

26

27  _____

28  [2] In fact, unlike in cases involving two separate lawsuits, there is no dispute over which forum is
    appropriate, and a stay can be granted without needing to decide between forums.

-8-

**2.   Resolving MShift's Claims Against DI Will Resolve the Claims Against the Customer Defendants.**

MShift has asserted only one cause of action—infringement of the '881 patent. All issues of claim construction, infringement, and patent defenses such as invalidity can be resolved by litigation between MShift and DI. If DI is found not to infringe or if the asserted patent claims are found to be invalid or unenforceable, then there will be no need for MShift to proceed against the Customer Defendants. Conversely, if MShift prevails and obtains an injunction against DI, that injunction will effectively stop any relevant activity by the Customer Defendants, since DI operates the online activities that are the target of MShift's claim against the Customer Defendants.

**3.   Discovery and Court Proceedings Would Be More Efficient if the Action Is Stayed Against the Customer Defendants.**

Although the underlying dispute concerns DI's product and technology, the mere presence of the Customer Defendants in the case will increase unnecessarily the amount of discovery, court filings, correspondence, and other activity in the case. For example, the Customer Defendants would need to participate in numerous activities required by the Patent Local Rules and other mandated procedures, such as filing a Case Management Statement, exchanging disputed claim constructions of the patent claim terms, filing invalidity contentions, *etc.* The Customer Defendants also would be required to respond to discovery requests and to provide documents and testimony that is duplicative of the documents and testimony provided by DI. For example, any relevant technical information in the possession of Customer Defendants would be duplicative of information also would be obtained from DI.

In addition, the trial would be simpler without the Customer Defendants, as the jury then would need to hear only testimony and opening and closing arguments from two parties instead of four. The Customer Defendants operate a regional bank in the South with branches in Louisiana, Texas, and Mississippi and have no physical presence in the Northern District of California. *See* Davis Declaration, ¶ 2. It would be unnecessarily burdensome to require the Customer Defendants to send corporate representatives and witnesses to a trial in Northern California when the Customer Defendants have no personal knowledge on liability issues that is not also in the

-9-

1  possession of DI.

2      All of these factors weigh even more heavily in favor of a stay because MShift has

3  expressly threatened that it intends to add other DI customers to the suit. *See* Ko Declaration,

4  ¶ 11 ("It is our intention to name all Financial Institutions that are or have been MShift customers

5  which now have a MMV / Digital Insight Mobile Banking site."). DI believes as many as 89

6  additional financial institutions could be at risk. If those companies are added to the suit, the

7  management of the case would become unwieldy.

8      **D.    Discovery Has Not Begun, and No Trial Date Has Been Set.**

9      The Complaint was filed just a few weeks ago. The parties have not yet held a Rule 26

10  conference, and discovery has not commenced. No trial date has been set. Thus, staying the case

11  now against the Customer Defendants will not result in any waste of litigation activities.

12  **V.    CONCLUSION**

13      For the foregoing reasons, DI respectfully requests that the Court stay this suit as to

14  Defendants Community Trust Financial Corporation and Community Trust Bank until MShift's

15  claims against DI are adjudicated.

16

17

18  Dated: March 8, 2010        DLA PIPER LLP (US)

19          By /s/ Andrew Valentine
20          ANDREW VALENTINE
        BRENT K. YAMASHITA
        ERIK R. FUEHRER
21
22          Attorneys for Defendants & Counterclaimant
        DIGITAL INSIGHT CORPORATION
23          and

24          RODGER R. COLE
        HEATHER N. MEWES
25          Fenwick & West LLP

26          Attorneys for Defendant and Counterclaimant
        DIGITAL INSIGHT CORPORATION
27

28